IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROSALIA E. RAMIREZ, on behalf of herself )
and all others similarly situated, )
)
         Plaintiff, ) Civil Action No. 07 C 3840
)
v. ) Suzanne B. Conlon, Judge
)
PALISADES COLLECTION LLC, )
)
         Defendant. )

**MEMORANDUM OPINION AND ORDER**

Rosalia Ramirez brings a class action against Palisades Collection, LLC ("Palisades"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e & 1692f. Ramirez claims Palisades violated the FDCPA by suing Illinois debtors on time-barred debts to attain default judgments against them. The following class has been certified:

> (a) all individuals with Illinois addresses, (b) against whom defendant filed suit on a credit card debt originated by Household Bank (c) where both the date of charge-off and the date of last payment, as shown by defendant's records, were more than five years prior to the date of filing, (d) where the lawsuit was filed or served on or after July 9, 2006 (one year before the filing of this action) and prior to July 29, 2007 (20 days after the filing of this action), and (e) defendant did not attach to the complaint a written contract signed by both the original creditor and the putative debtor.

*Ramirez v. Palisades Collection*, --- F.R.D. ----, 2008 WL 835694 (N.D. Ill. Mar. 28, 2008). The parties cross-move for summary judgment. For the reasons set forth below, the motions are denied.

**I. SUMMARY JUDGMENT STANDARD**

On cross-motions for summary judgment, each movant must satisfy Fed. R. Civ. P. 56's

requirements. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). Each movant has the burden of establishing there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant satisfies this burden, the non-movant must set forth specific facts supported by admissible evidence that establish a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Batish v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001).

## II.     BACKGROUND UNCONTESTED FACTS

Ramirez is a Chicago resident and Palisades is a New Jersey limited liability company. Pl. Facts ¶¶ 1-2. Palisades purchases charged-off credit card debt and enforces the debt against consumers. *Id.* ¶¶ 4-6.

Ramirez opened a Household Bank credit card account over the phone in 2000, prompting the mailing of her credit card and paperwork.[1] Def. Facts ¶¶ 8-9. She used the credit card for personal items and received monthly billing statements. *Id.* ¶¶ 11-13. The last payment

---

[1] The credit card was originally issued by Orchard Bank. Def. Facts ¶ 5. HSBC Bank Nevada, N.A. f/k/a Household Bank (SB), N.A. acquired Orchard Bank. *Id.* ¶¶ 6-7; 19.

2

made on the account was in December 2000. Pl. Facts ¶ 13. After defaulting on her account, Ramirez's balance remained unpaid. Def. Facts ¶ 18. The debt was charged-off on June 1, 2001. Pl. Facts ¶ 14. In December 2005, Palisades purchased Ramirez's credit card debt from Household Bank. *Id.* ¶ 10.

On or about November 20, 2006, Palisades sued Ramirez in Cook County circuit court to collect the debt. *Id.* ¶ 17. The collection complaint attached one exhibit, an affidavit executed by a Palisades employee in support of Palisades' claim. *Id.* ¶ 18. The complaint did not attach a written agreement signed by Ramirez or an affidavit explaining its absence. *Id.* ¶ 19. Whether Palisades obtained Ramirez's account agreement is disputed. *Id.* ¶ 24. After Ramirez retained counsel to defend the collection case, Palisades dismissed the suit without prejudice. *Id.* ¶¶ 20-21.

Palisades treats all credit card debt of Illinois residents as subject to the state's 10-year statute of limitations for written contracts. *Id.* ¶ 22. Palisades relies on an in-house statute of limitations chart to determine the applicable limitations period for filing collection suits in Illinois. *Id.* ¶ 28. The chart was created by Palisades' director of collections, Monica Bey, based on another multi-state chart created by Wolpoff & Abramson, Palisades' national collection attorney network firm. *Id.* ¶¶ 29-31. The Wolpoff & Abramson chart states that Illinois credit card accounts are considered written contracts, that there is a reported decision on point, that the statute of limitations runs from the date the account is charged off, that the statute of limitations is 10 years, and that it can be revived by the date of last payment. Def. Facts ¶ 41 Ex. K.

Palisades uses Wolpoff & Abramson to delegate its Illinois cases to outside collection attorneys to file debt collection suits. Pl. Facts ¶ 32. Part of the decision in determining whether

a debt should be sent to outside collection attorneys is assessing whether the underlying debt is time-barred. Def. Facts ¶ 53. If Palisades determines that an account has at least 120 days left until expiration of the statute of limitations, the account is qualified to be outsourced for collection. *Id.* ¶ 56. Not every account that Palisades forwards to its outside collection attorneys results in a lawsuit. *Id.* ¶ 58.

## III. DISCUSSION

### A. Statute of Limitations

Ramirez moves for summary judgment because Palisades' debt collection suit was untimely under the five-year limitations period for unwritten contracts, rendering it a deceptive practice under the FDCPA. Palisades disputes this, arguing its collection suit was subject to the 10-year limitations period for written contracts.

#### 1. *Written v. Unwritten Contracts*

In Illinois, a plaintiff has 10 years to sue for violation of a written contract and five years to sue for violation of an unwritten contract. 735 ILCS 5/13-206; 735 ILCS 5/13-205.[2] The meaning of a written contract for statute of limitations purposes is strictly interpreted. *Held v. Held*, 137 F.3d 998, 1001 (7th Cir. 1998) (citing *Toth v. Mansell*, 207 Ill. App. 3d 665, 669, 566 N.E.2d 730 (Ill. App. Ct. 1990). In order to qualify for the 10-year limitations period, the written instrument itself must identify the parties to the agreement and all essential terms. *Brown v.*

---

[2]735 ILCS § 5/13-206 provides, in relevant part, that "actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing . . . shall be commenced within 10 years next after the cause of action accrued." 735 ILCS § 5/13-205 provides that "actions on unwritten contracts ... shall be commenced within 5 years next after the cause of action accrued."

4

*Goodman*, 147 Ill. App. 3d 935, 939, 498 N.E.2d 854 (Ill. App. Ct. 1986); *Toth*, 207 Ill. App. 3d at 669. The test is whether all essential terms including the identity of the parties can be ascertained from the written instrument itself. *Id.* Even where there is a written contract, the five-year limitations period is applicable if parol evidence is necessary to establish that the plaintiff has the right to bring suit. *Toth*, 207 Ill. App. 3d at 669. If the existence of the contract or an essential term of the contract must be proven by parol evidence, the contract is deemed to be an oral contract; the five-year statute of limitations applies. *See Armstrong v. Guigler*, 174 Ill.2d 281, 294, 673 N.E.2d 290 (Ill. 1996).

The existence of a contract between Ramirez and Household Bank is undisputed, but the question remains whether the contract was written or unwritten for statute of limitations purposes. There has been no evidence presented of a written contract, stating all the essential terms of an agreement. Indeed, Illinois law requires that a plaintiff suing for violation of a written contract must attach that contract to its complaint; if it does not, the contract is considered unwritten. 735 ILCS 5/2-606; *Barnes v. Peoples Gas Light and Coke Co.*, 103 Ill. App. 2d 425, 428, 243 N.E.2d 855, 857 (Ill. App. Ct. 1968); *O.K. Elec. Co. v. Fernandes*, 111 Ill. App. 3d 466, 444 N.E.2d 264, 267 (Ill. App. Ct. 1982); *Plocar v. Dunkin' Donuts of Am., Inc.*, 103 Ill. App. 3d 740, 749, 431 N.E.2d 1175 (Ill. App. Ct. 1981).

Palisades did not attach a copy of a written credit card contract to its November 20, 2006 debt-collection complaint. The complaint did not include a recitation of the contract terms. Illinois permits a pleader to include an affidavit explaining the absence of the written contract. 735 ILCS 5/2-606. Palisades did not satisfy this provision either. Instead, Palisades attached an "Affidavit in Support of Plaintiff's Claim," stating that Ramirez owed Palisades $2,425.95 on her

5

Household Bank account. The affidavit clearly does not constitute a written contract, and fails to state all the essential terms of a contract. *See, e.g., Parkis v. Arrow Fin. Servs.*, No. 07 C 410, 2008 WL 94798, at *5 (N.D. Ill. Jan. 8, 2008) (Coar, J.) (citation omitted).

Palisades' assertion that the 10-year limitations period should apply is further undermined because parol evidence would be necessary to determine *its* right to sue Ramirez. Even if a written contract existed between Ramirez and *Household Bank*, parol evidence would be required to determine whether that contract was enforceable by Palisades, whether the assignment of that contract to Palisades was lawful, and whether the terms of the original agreement were altered. Palisades was not a named party to the contract that purportedly bound Ramirez. *See, e.g., Brown*, 147 Ill. App. 3d at 939 (parol evidence necessary to ascertain contractual relationship between plaintiff and defendant); *Peterson v. Superior Bank FSB*, 242 Ill. App. 3d 1090, 1097, 611 N.E.2d 1139 (Ill. App. Ct. 1993) (parol evidence required to show nexus between defendant and underlying transaction); *cf. Kordewick v. Indiana Harbor Belt R. Co.*, 157 F.2d 753, 755 (7th Cir. 1946) (parol evidence required to show existence of contractual relationship between plaintiff and defendant). Indeed, Palisades' affidavit attached to the Ramirez collection complaint constitutes parol evidence.

The parties agree that many card issuers can change the terms of the original contract at will, by simply sending notice to the consumer, where the use of the card without objection constitutes acceptance of the new terms. Palisades cites *Garber v. Harris Trust & Sav. Bank*, 104 Ill. App. 3d 675, 678, 432 N.E.2d 1309 (Ill. App. Ct. 1982). The Illinois appellate court ruled that "a contract is not formed at the time of issuance of the credit card ... a separate contract is created each time the card is used according to the terms of the card holder agreement at the

time of such use." *Id.* Under this holding, even if an original written credit card contract existed and was attached to the collection complaint, parol evidence would still be needed to make the contract complete. *See Parkis*, 2008 WL 94798, at *5. In any event, because a written contract was not attached to the debt-collection complaint and no evidence has been proffered that a written contract exists, the contract must be considered "unwritten" under Illinois law. *Id.* The five-year statute of limitation plainly applies under Illinois law.

Palisades relies on *Harris Trust & Sav. Bank v. McCray*, 21 Ill. App. 3d 605, 316 N.E.2d 209 (Ill. App. Ct. 1974) in arguing that all credit card agreements are considered written contracts. The *Harris Trust* court found that a credit card agreement constituted a loan contract rather than a sales contract. The appellate court's analysis did not address whether the credit card agreement was written or unwritten for statute of limitations purposes. The reasoning in *Harris Trust* does not apply to the present case, where the issue is whether the Palisades sued on a written or unwritten contract. *See, e.g., Parkis*, 2008 WL 94798, at *6 (distinguishing *Harris Trust* from a similar set of facts).

### 2. *Other Evidence of Indebtedness In Writing*

Palisades contends that the 10-year limitations period applies because Ramirez's monthly billing statements constitute "evidence of indebtedness." 735 ILCS 5/13-206 (10-year limitation applies to actions based on "other evidence of indebtedness in writing"); *see also Garrett's Estate v. Garrett*, 24 Ill. App. 3d 895, 322 N.E.2d 213 (Ill. App. Ct. 1975) (promissory note constituted "other written evidence of indebtedness" sufficient to warrant 10-year limitations period). This argument is unpersuasive.

To qualify as written evidence of indebtedness, a document need not resort to parol

7

evidence to establish the vital elements of the agreement. *See Peterson*, 242 Ill. App. 3d at 1097. As discussed above, parol evidence would be required to establish Palisades' right to sue Ramirez. *See, e.g., id.* (parol evidence required to show nexus between defendant and the transaction); *Brown*, 147 Ill. App. 3d at 939 (parol evidence necessary to ascertain contractual relationship between plaintiff and defendant). The monthly billing statements do not show Ramirez's indebtedness to Palisades, as Palisades was not a party to the underlying contract between Ramirez and Household Bank. Moreover, it is uncertain whether parol evidence would be required to determine other vital elements of an agreement. For example, billing statements do not contain terms defining acts of default or other remedies, nor do they state whether terms can be changed or altered. It is also questionable whether billing statements reflect an affirmative promise to pay by the customer. Accordingly, the five-year limitations period for unwritten contracts applies to Palisades' debt collection complaint.

### B. FDCPA Violation

Given the applicability of the five-year statute of limitations to Palisades' debt collection complaint, there is no dispute that the November 20, 2006 complaint was time-barred. The next question is whether Palisades violated the FDCPA by suing Ramirez on a time-barred claim.

A central purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692e. Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including the false representation of "the character, amount, or legal status of any debt"; "the threat to take any action that cannot legally be taken or that is not intended to be taken"; and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to

obtain information concerning a consumer." *Id.* § 1692e(2), (5) & (10). Courts view FDCPA claims "through the eyes of an 'unsophisticated debtor.'" *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006) (quoting *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994)). Accordingly, a debt collector may not file time-barred lawsuits against a debtor where it knows or reasonably should have known it was time-barred. *Stepney v. Outsourcing Solutions, Inc.*, No. 97 C 5288, 1997 WL 722972, at *4 (N.D. Ill. Nov. 13, 1997) (Conlon, J.); *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1488-89 (M.D. Ala. 1987).

Similarly, § 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." This provision requires collection of debt to be "expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). A debt collector who files a lawsuit to collect an apparently time-barred debt, "without first determining after a reasonable inquiry that the limitations period is due to be tolled, constitutes an unfair and unconscionable practice offensive to § 1692f." *Kimber*, 668 F. Supp. at 1487; *see also Stepney*, 1997 WL 722972, at *4 (citations omitted).

Ramirez contends that because the statute of limitations plainly expired on her debt, Palisades' suit was a false representation to collect or attempt to collect the debt in violation of § 1692e(10). Ramirez asserts that the FDCPA is a strict liability statute, and Section 1692e does not require proof of intent. Further, Ramirez alleges Palisades' collection suit was also an unfair means to collect the debt in violation of § 1692f, because Palisades hoped Ramirez would not realize that the statute of limitations had expired.

Palisades counters that the FDCPA does not afford relief for a statute of limitation violation under state law, and its decision to apply the 10-year statute of limitation was a mistake

of law and subject to the bona fide error defense. Attempts to collect on plainly time-barred debts are actionable under the FDCPA. *See Parkis*, 2008 WL 94798, at *7; *Stepney*, 1997 WL 722972, at *4; *Kimber*, 668 F.Supp. at 1487-90; *Baptist v. Global Holding & Inv.. Co.*, No. 04 C 2365, 2007 WL 1989450, at *4-5 (E.D.N.Y. July 9, 2007); *Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262, 272 (D. Conn. 2005); *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 393 (D. Del. 1991). These decisions recognize that "threatening of a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate." *Id.* (citation omitted). Thus, Ramirez's claim that Palisades' violated the FDCPA by filing an unwinnable lawsuit is not foreclosed as a matter of law. To the contrary, because Palisades filed a plainly time-barred suit against an unwitting consumer, it can be subject to liability under §§ 1692e & 1692f of the FDCPA. *See, e.g., Parkis*, 2008 WL 94798, at *7 (filing of a suit that appears time-barred and where plaintiff knew or should have known that the claim was time-barred violated §§ 1692e & 1692f); *Kimber*, 668 F. Supp. at 1487-1490 (same); *Baptist*, 2007 WL 1989450, at *5 (where statute of limitations undeniably barred claim, threat of litigation violated § 1692e).

### C. Bona Fide Error Defense

Summary judgment is unwarranted because fact issues remain with regard to whether Palisades can establish a bona fide error defense. The FDCPA does not require Ramirez to show intentional conduct by Palisades in order to recover damages. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000). Although the act imposes strict liability, Palisades may defend itself by demonstrating by a preponderance of the evidence that its violation of the act was not intentional and resulted from a bona fide error notwithstanding the maintenance of

10

procedures reasonably adapted to avoid such an error. *Id.*; 15 U.S.C. § 1692k(c); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 997 (7th Cir. 2003).

Palisades argues its decision to apply the 10-year statute of limitations was a mistake of law, subject to the bona fide error defense. *See, e.g., Johnson v. Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006); *cf. Nielsen v. Dickerson*, 307 F.3d 623, 640-41 (7th Cir. 2002) (recognizing split of authority on the issue but noting that the bona fide error defense provision of the FDCPA does not expressly remove legal mistakes). Palisades also asserts that, because it believed the statute of limitation to be 10 years, its filing of the collection suit was not an intentional violation of the FDCPA, but a bona-fide error. *See, e.g., Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). Last, Palisades contends that it maintained reasonable procedures to avoid such errors. *See id.* These procedures involved (1) screening through a timeliness chart indicating which debt accounts were time-barred under a 10-year statute of limitations; (2) automated screening by Palisades' IT department to calculate which debt accounts fell within the statute of limitations; (3) additional compliance measures indicating that an account with at least 120 days left on the statute of limitations would be outsourced to collection attorneys; and (4) relying on outsourced collection attorneys to exercise their independent judgment on whether to file suit.

Ramirez disputes this characterization, arguing that Palisades' procedures were unreasonable because they relied on incompetent legal advice. Ramirez specifically attacks the statute of limitations chart created by Wolpoff & Abramson because the chart does not constitute competent legal advice. Ramirez also objects to Wolpoff & Abramson's qualifications as a networking law firm, and argues that Palisades' miscalculation of when the limitations period

11

accrued demonstrates incompetent legal advice. Indeed, a reasonable jury could find that Palisades' screening procedures were not reasonably adapted to avoid the error at issue, and that the error was not bona-fide. On the other hand, a reasonable jury may also find that Palisades' screening procedures were sufficient, and that its error was bona-fide and unintentional. A genuine issue of material fact exists whether Palisades' error was bona-fide and unintentional. *See, e.g., Parkis*, 2008 WL 94798, at *7; *Richburg v. Palisades Collection LLC*, 247 F.R.D. 457, 467-68 (E.D. Pa 2008) (genuine issue of fact with respect to bona fide error defense precluded summary judgment); *Johnson*, 443 F.3d at 727-28 (same). Accordingly, the parties' summary judgment motions are denied as to whether Palisades may avoid FDCPA liability.

## CONCLUSION

Due to the reasons set forth above, the parties' cross-motions for summary judgment are denied.

ENTER:

*[signature]*

Suzanne B. Conlon
United States District Judge

June 23, 2008